UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RD Sharma, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 24 C 2365 |
| v. | ) | |
| | ) | Hon. Jorge L. Alonso |
| Rhino Holdings Aurora, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**Memorandum Opinion and Order**

Before the Court is Defendant Rhino Holdings Aurora, LLC's motion to dismiss Plaintiff RD Sharma's complaint under Federal Rules of Civil Procedure 12(b)(6) and 9(b). For the reasons stated below, Defendant's motion is granted in part and denied in part. [14]

**Background**

The Court takes the below facts primarily from the well-pleaded allegations in Sharma's complaint, which are accepted as true for purposes of Defendant's motion to dismiss. *United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016). In addition, the Court takes certain facts from the documents attached to or referenced in Sharma's complaint. *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013).

A. **The Kid's Empire Lease And Sharma's Bid**

In September 2022, Defendant entered into a lease with tenant Kid's Empire ("the KE Lease") allowing Kid's Empire to occupy space in a shopping center owned by Defendant. The KE Lease required certain improvements, referred to as "Landlord's Work" or "Landlord Work," to be substantially completed prior to delivery of the premises to Kid's Empire. The KE Lease also

1

included a provision related to tenant improvements, which required Defendant to provide funds to Kid's Empire for certain costs and expenses Kid's Empire actually incurred in making improvements to the property. The KE Lease included a "Rent Commencement Date" which would occur "ninety (90) days after the earlier of (i) one hundred and eighty (180) days after the Delivery Date or (ii) the date that the tenant opens for business." (ECF No. 14-1 at 2.)

At some point before August 2023, Defendant retained JLL as a broker to assist in marketing its shopping center for sale. JLL developed an offering memorandum containing information provided by Defendant, including the below chart, referred to as a "rent roll," which gave "10/1/23" as the date of "lease commencement."

| Suite | Tenant | SF | % of GLA | Lease Commencement | Lease Expiration | Annual Rent | Rent/ SF | Annual Recoveries | Rec/ SF | Total Income | Total Income/SF | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1610 | Kid's Empire | 10,004 | 11.7% | 10/1/23 | 9/31/33 | $190,076 | $19.00 | $44,447 | $4.44 | $234,523 | $23.44 | NNN + 15% on all CAM |
| | Rent Bump | | | 10/1/28 | | $209,084 | $20.90 | - | - | $209,084 | - | |
| | Option 1 | | | 10/1/33 | 9/30/38 | $229,992 | $22.99 | - | - | $229,992 | - | |
| | Option 2 | | | 10/1/38 | 9/30/43 | $253,001 | $25.29 | - | - | $253,001 | - | |

Sharma found this property listed on a commercial real estate auction platform known as Ten-X, where Defendant had made the offering memorandum available, and he contacted JLL regarding the property. The morning before bids were due, JLL informed Sharma that Landlord Work was not completed for the KE Lease, but that Defendant would complete this work at its own expense and provide Sharma with a credit at closing for rent that would have been received in the period during which Defendant completed the Landlord Work. Sharma subsequently submitted a bid for the property, which Defendant accepted. Subsequently, Ten-X provided Sharma with a purchase and sale agreement ("PSA") and associated addenda for review and execution. Sharma had only two hours to review and sign these documents.

B. **The PSA And Addenda**

2

The parties executed the PSA and the associated addenda on August 23, 2023, which established a closing date for the sale of September 23, 2023. In connection with this execution, Sharma made an earnest money payment of 10% of the purchase price to the parties' escrow agent. In the PSA, Defendant represented that the information contained in Exhibit C to the PSA was "true, correct, and complete in all material respects." (ECF No. 11-1 at 4, § 10(D).) Exhibit C, as excerpted and highlighted by Sharma, includes a rent roll containing the below information related to the KE Lease.

| # | Suite | Leased / Spec | Tenant | Occupied SF | Existing SF | Occupancy | % of Total | Lease Start | Lease Expiration | Term Remaining (Yrs.) | Annual /SF | Annual Amt | Lease Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3 | 1610 | Leased | Kids Empire | 10,004 | 10,004 | 100% | 12% | 8/1/2023 | 7/31/2033 | 10.1 | $19.00 | $190,076 | NNN |

*In-Place Rent Roll*

However, at the time the PSA was executed Kids' Empire had not yet begun paying rent. The PSA included conditions precedent for Sharma to close, including that "[a]ll representations and warranties of Seller in this Agreement shall have been true in all material respects as of the Effective Date." (ECF No. 11-1 at 9, § 5(B)(i).) The PSA also provided "[i]f Closing does not or cannot occur on or before the Closing Date due to a breach of this Agreement by Buyer or Seller, then the non-breaching party may terminate this Agreement and cancel the Escrow by written notice to the breaching party and Closing Agent." (*Id.* at 10, § 8(A).) One of the addenda to the PSA concerned outstanding tenant improvement payments to be made to Kid's Empire, noting that Defendant would credit Sharma $510,160 at closing.

C. **Extension Of The Closing Date And Sharma's Eventual Termination Of The PSA**

After the execution of the PSA and addenda, Sharma executed his option to extend the closing date by 30 days by paying Defendant 5% of the purchase price. During this time, Sharma attempted to reach a resolution with Defendant regarding outstanding Landlord Work and credits

3

for rent not paid by Kid's Empire. The Parties did not reach a resolution on these issues. Sharma sought another short extension of the closing date, which Defendant denied. Ultimately, Sharma terminated the PSA shortly before closing, and Defendant disputed the termination. To date, no funds have been reimbursed to Sharma.

On May 1, 2024, Sharma filed an amended complaint alleging claims for breach of contract, declaratory judgment, conversion, and fraud. (ECF No. 11.) On May 31, 2024, Defendant moved to dismiss each of Sharma's claims. (ECF No. 14.)

## Legal Standards

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Federal Rule of Civil Procedure 9(b) requires a party that is alleging fraud to "state with

4

particularity the circumstances constituting fraud or mistake." Stating a claim for fraud "ordinarily requires describing the who, what, when, where, and how of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citations and quotations omitted). A complaint alleges fraud with particularity when it "paint[s] a sufficiently detailed picture of the alleged scheme." *Id.*

### Discussion

For the reasons that follow, Sharma's claims for breach of contract and fraud may proceed, but Sharma's claims for conversion and declaratory judgment are dismissed with prejudice.

#### A. **Breach Of Contract**

Sharma alleges that Exhibit C to the PSA falsely represented that Kid's Empire had begun paying rent to Defendant at the time the PSA was signed, constituting a material breach of Defendant's warranty, entitling Sharma to terminate the transaction and recover funds paid. Defendant argues that Sharma's breach of contract claim fails because (1) the PSA did not represent or warrant that Kid's Empire had begun paying rent, (2) the addendum controls the interpretation of the PSA and bars Sharma's claim, (3) Defendant's breach is excused by Sharma's failure to perform, and (4) Sharma's conduct constituted waiver of his right to enforce the PSA.

##### i. It Is Plausible The PSA Represented That Kid's Empire Was Paying Rent

Defendant argues briefly that "[n]othing contained in the Agreement or in Exhibit C represents which tenants were actively paying rent or makes any representation whatsoever about whether Kid's Empire . . . was currently paying lease payments." (ECF No. 14 at 7.) Sharma responds that Exhibit C is a representation that rent was being paid by Kid's Empire. The Court

agrees with Sharma.

Illinois law "requires that contracts be interpreted as a whole, in a way that gives effect to all terms, in light of their ordinary and natural meanings." *La LaSalle Nat. Tr., N.A. v. ECM Motor Co.*, 76 F.3d 140, 144-45 (7th Cir. 1996). When "a contract is ambiguous, the resolution of the ambiguity becomes a question of fact, to be decided by the trier of fact." *Id.* "A contract is ambiguous if the language used is reasonably or fairly susceptible to having more than one meaning, even when considering the disputed language in the context of the entire agreement." *Bonchon U.S.A., Inc. v. Aaron Allen & Assocs., LLC*, No. 22 CV 02658, 2024 WL 1363422, at *3 (N.D. Ill. Mar. 30, 2024) (quotations omitted).

Exhibit C of the PSA contained a table titled "In-Place Rent Roll" with an entry for Kid's Empire containing a "Lease Start" date of August 1, 2023, and an associated "Annual Rent." (ECF No. 11-1 at 20.) Given that the KE Lease was executed on September 11, 2022, (ECF No. 14-1 at 1), it is unclear what the August 1, 2023 date refers to. One fair and reasonable reading of this undefined term, taken together with the title of "In-Place Rent Roll" and the associated annual rent amount for the KE Lease, is that Kid's Empire had begun to pay rent. Because a reasonable factfinder could interpret this provision in a way that would permit the conclusion that Defendant is liable for breach of contract, Defendant's motion to dismiss is denied as to this basis.

    **ii.**     **The Addendum Does Not Clearly Contradict The PSA**

Defendant next argues that even assuming it breached the warranty in the PSA, its breach should be excused because the addendum referencing the credit of tenant improvement payments due to Kid's Empire and to be credited to Sharma at closing modified the contract. Sharma responds that Defendant misunderstands the difference between tenant and landlord improvement.

6

The Court agrees with Sharma.

A contract is modified when new elements are introduced into a contract and others are cancelled, without disturbing the general purpose of the contract. *Curia v. Nelson*, 587 F.3d 824, 830 (7th Cir. 2009). "Once modified, an original contract remains in force only to the extent that it is not modified by the new agreement." *Id.* Ultimately, the Court cannot find modification as a matter of law when the resulting combined contract is ambiguous. *Id.* at 829.

The addendum provides that "Seller shall credit to Buyer Kids Empire TI ($510,160) at close." (ECF No. 11-1 at 6.) This language does not clearly contradict the existing terms of the PSA. The KE Lease provides that the rent commencement date begins 90 days after the earlier of (1) the date Kid's Empire opens for business or (2) 180 days after Kid's Empire obtains possession of the premises. (ECF No. 14-1 at 2.) The KE Lease does not, however, condition Kid's Empire opening for business or obtaining possession on its receipt of tenant improvement payments. As such, the Court cannot find that the addendum is inconsistent with the PSA and will not dismiss Sharma's claim on this basis.

Further, contrary to Defendant's contention, the Court need not decide whether the addendum extending the closing date bars recovery of the payment made in connection with that addendum because "[a] motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (emphasis in original). Because Sharma has stated a claim for breach of contract, this Court may not consider Defendant's argument at this time.

      **iii.**      **Defendant's Breach Is Not Excused By Sharma's Alleged Non-Performance**

Defendant next argues that Sharma's decision not to close on the sale is a prior breach that bars recovery. In effect, Defendant argues that, even if it did breach its representations and warranties, the breach was not material. Sharma responds that Defendant's breach was a condition precedent, and as such, a material breach.

It is true, as Defendant argues, that a breach of representations and warranties is not necessarily a breach of performance. (ECF No. 14 at 8-9 (citing *Miller v. UMG Recordings, Inc.*, No. 19-CV-02262, 2020 WL 635909, at *2 (N.D. Ill. Feb. 10, 2020)).) However, Defendant's cited authority lends it no help. In *Miller*, the Court denied a motion to dismiss, reasoning that the alleged "breach of warranties would not necessarily excuse Defendant from its performance under the Settlement Agreement." 2020 WL 635909, at *2. Defendant cites no authority suggesting that, as a matter of law, its breach of warranty was not material. Because Defendant's cited case law does not support its position, the motion is denied as to this basis.

### iv. Defendant Waived Its Waiver Argument

Lastly, in reply Defendant raises for the first time that Sharma's conduct should amount to a waiver of his ability to sue for breach of contract. (ECF No. 18 at 4.) Because Defendant raised this for the first time in its reply, this argument is itself waived. *Sherrie Reed v. Vintage Healthcare Servs., Inc*, No. 24 C 3186, 2025 WL 36231, at *4 (N.D. Ill. Jan. 6, 2025).

### B. Declaratory Judgment

Next, Defendant argues that Sharma's claim for declaratory judgment should be dismissed because it substantially overlaps with his claim for breach of contract. Sharma does not meaningfully dispute this. The Court agrees that Sharma's declaratory judgment claim raises no issues not addressed by Sharma's breach of contract claim and serves no useful purpose. As

such, the Court dismisses this claim with prejudice. *See Long v. Bank of Am., N.A.*, No. 17 CV 2756, 2018 WL 5830794, at *5 (N.D. Ill. Nov. 7, 2018) (dismissing declaratory judgment count with prejudice because it was duplicative of other claims); *Cohn v. Guaranteed Rate Inc.*, 130 F. Supp. 3d 1198, 1205 (N.D. Ill. 2015) ("This Court has discretion to decline to hear a declaratory judgment action even if it considers the action justiciable." (citing *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.,* 819 F.2d 746, 747 (7th Cir.1987))).

    C.    **Conversion**

Defendant next argues that Sharma has not stated a claim for conversion under the legal standard for the conversion of money. Sharma attempts to distinguish Defendant's authority but cites no authority demonstrating that a claim for conversion is proper on these facts. The Court agrees with Defendant and dismisses Sharma's conversion claim with prejudice.

In order to state a claim for conversion under Illinois law, a plaintiff must plead "(1) an unauthorized and wrongful assumption of control, dominion, or ownership by defendant over plaintiff's personalty; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property." *Toll Processing Servs., LLC v. Kastalon, Inc.*, 880 F.3d 820, 824 (7th Cir. 2018) (citing *Gen. Motors Corp. v. Douglass*, 565 N.E.2d 93, 96-97 (Ill App. 3rd Div. 1990)). However, to establish a claim for conversion of money, a plaintiff must also "show that: (1) plaintiff's right to the money was 'absolute' and 'immediate;' (2) the money '*at all times* belonged to the plaintiff'; (2) defendant converted the money for its own use; and (3) that the money at issue can be described as 'a specific fund or specific money in coin or bills.'" *Pomaranski v. Chicago Prime Packers, Inc.*, No. 23-CV-5063, 2024 WL 3950315, at *3 (N.D. Ill. Aug. 27, 2024) (emphasis in original)

(quoting *Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002)).

Sharma's conversion claim fails because the money claimed did not belong to him at all times. *Horbach*, 288 F.3d at 978, is instructive. There, the Seventh Circuit upheld the dismissal of a conversion claim where money was paid in exchange for services that the plaintiff was unsatisfied with. *Id.* The court reasoned that, while there may be an obligation "to return some or all of the money," the plaintiff "cannot show that the money at all times belonged unconditionally to him" because "[h]is agreement with the defendants obligated him to pay them that money; and the defendant's receipt of the money thus cannot be described as unauthorized or wrongful in the sense that a claim for conversion requires." *Id.*

So, too, here. As discussed previously, Sharma voluntarily made the payments pursuant to the PSA and addenda. Pursuant to the very term of the PSA that Sharma cites, his entitlement to reimbursement could arise only at termination. (ECF No. 11-1 at 10, § 8(A).) Sharma terminated the PSA shortly before closing, nearly two months after executing the PSA. (ECF No. 11 at ¶ 51.) During the period between Sharma's transmission of funds and his termination of the PSA, the funds did not unquestionably belong to Sharma, and his conversion claim must be dismissed.

Because Sharma's conversion claim is foreclosed by the text of the PSA, amendment would be futile, and the dismissal is with prejudice. *Pomaranski*, 2024 WL 3950315, at *5 (dismissing conversion claim with prejudice when it could not be alleged consistent with the text of an agreement).

D.  **Fraud**

Lastly, Defendant argues that Sharma's fraud claim should be dismissed because it either does not satisfy Rule 9(b)'s particularity requirements or because Sharma has failed to adequately

10

plead reasonable reliance. The Court finds that Sharma pleads fraud with sufficient particularity and adequately pleads reasonable reliance.

### i. Particularity

Defendant argues that Sharma has failed to state his claim for fraud with particularity because he does not plead that he reviewed the offering memorandum or rent roll prior to placing the bid at the allegedly elevated price or the circumstances of Defendant's communication with its broker. But the circumstances constituting fraud are clear:

**Who:** Defendant and agents that acted on its behalf. (ECF No. 11 ¶¶ 3, 23-24, 31.)

**What:** Representing to Sharma that Kid's Empire was paying rent to Defendant, when rent had not yet begun. (*Id.* ¶¶ 3-5, 25-32, 45-47, 76, 78-79.)

**When:** Prior to Sharma making his offer. Sharma explicitly states that "he would not have offered to purchase the property at the price in the PSA had he known the KE Lease had not commenced, since [he] calculated his offer based in part on the lease revenue." (*Id.* ¶ 5.)

**Where:** In the offering memorandum and Exhibit C to the PSA. (*Id.* ¶¶ 3, 25-31, 44-46.)

**How:** Convincing Sharma to offer a higher price than he would have otherwise offered through misleading Sharma into believing that Kid's Empire was paying rent to Defendant. (*Id.* ¶ 5.)

Finally, the Court is not persuaded that Sharma needed to plead additional facts regarding Defendant's communications with its agents. At the outset, even without these facts, Sharma "paint[s] a sufficiently detailed picture of the alleged scheme" as outlined above. *AnchorBank,* 649 F.3d at 615. Even more, a plaintiff's burden under Rule 9(b) is relaxed as to certain facts when a plaintiff does not have access to facts necessary to detail their claim. *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 778 (7th Cir. 2016). Here, Sharma could not

11

detail the claims regarding communication between Defendant and its agents which he was not a party to. As such, Sharma states his claim for fraud with sufficient particularity.

    ii.    **Reasonable Reliance**

Defendant argues that Sharma has not adequately plead reasonable reliance to state a claim for fraud because the facts known to Sharma and the facts that were available to Sharma through reasonable diligence make his reliance unreasonable. Sharma argues that this question is one of fact. The Court agrees with Sharma.

Generally, a determination of whether a plaintiff's reliance was reasonable is fact-intensive and not appropriate at the motion to dismiss stage. *Forth v. Walgreen Co.*, No. 17-CV-2246, 2018 WL 1235015, at *6 (N.D. Ill. Mar. 9, 2018) ("[R]esolution of such a fact-intensive inquiry is not appropriate at the motion-to-dismiss stage."); *Boyd Grp. (U.S.) Inc. v. D'Orazio*, No. 14 CV 7751, 2015 WL 3463625, at *9 (N.D. Ill. May 29, 2015) ("Whether reliance is reasonable is generally ill-suited for determination on a motion to dismiss." (citing *Rowe v. Maremont Corp.,* 850 F.2d 1226, 1234 (7th Cir. 1988))). The circumstances of this case do not justify departure from this ordinary rule, so the Court will not dismiss Sharma's fraud claim on these grounds.

### Conclusion

Defendant's motion [14] is granted in part and denied in part. The Court grants the motion as to Sharma's declaratory judgment and conversion claims, which are dismissed with prejudice. The Court denies the motion as to Sharma's claims for breach of contract and fraud. Defendant's answer is due fourteen days after the entry of this order. A status hearing is set for February 26, 2025. The parties shall file a joint status report three business days prior to the status hearing.

SO ORDERED.                                                                     ENTERED: January 29, 2025

                                                                                                          _____
                                                                                                          **HON. JORGE ALONSO**
                                                                                                          **United States District Judge**

13